IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALAN SEALS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR. STEVEN LEATH, et al., | ) | |
| | ) | |
| Defendants. | ) | CASE NO. 3:19-cv-468-ALB-JTA |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a motion by Dr. Steven Leath and various other former or current officials of Auburn University ("Defendants"), to dismiss the allegations of Alan Seals ("Plaintiff"), Professor of Economics at Auburn University. Plaintiff alleges First Amendment retaliation in violation of 42 U.S.C §1983, a federal law conspiracy to commit First Amendment retaliation in violation of 42 U.S.C. § 1985, and a state law conspiracy to commit First Amendment retaliation. Defendants have filed a motion to dismiss all three counts. *See* Doc. 16. Upon consideration, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the complaint and are accepted as true for present purposes.

Six years ago, Professors at Auburn University became aware that an unusually high percentage of student-athletes were clustered in the same major: Public Administration. Although Professors voted overwhelmingly to end the major, believing it to be of little academic value, Defendant Boosinger, the Provost, overrode their decision and kept the program open. It eventually came to light that the Auburn University athletic department had offered to subsidize the Public Administration major by paying its staff. Articles were published about these events on December 5, 2014, August 28, 2015 and November 1, 2015. Seals served as a source for two of them.

Seals' frustration with the actions of Auburn's leadership led him to create a collage of University officials linking arms with Joseph Stalin. He affixed this collage to the door of his University office. On October 18, 2016, Defendant Aistrup emailed Seals, requesting the removal of the collage and ostensibly attempting to intimidate him by inviting Seals to his office for a better picture. On October 24, in front of at least one witness, Defendant Aistrup approached Seals prior to a meeting and said "may the wings of corruption carry you far." This conduct was brought to the attention of University President Gogue on January 11, 2017.

Between January and April of 2017, Seals was intimately involved in a campaign by senior members of the Auburn economics faculty to form a new school of economics and become organizationally independent from the College of Liberal Arts within the Auburn University organization. The proposal was successful, and, on April 11, the economics department became operationally independent from the College of Liberal Arts. On June 19, Defendant Leath took over from Gogue as the President of Auburn University. On July 5, Defendant Boosinger, whose favorable treatment of Public Administration and the athletic department Seals had taken part in publicizing, purported to unilaterally reverse the organizational shift and reabsorbed the economics department into the College of Liberal Arts.

On February 16, 2018 another article covering the athletic department's Public Administration scandal was published and again Seals served as a source. By late March, Seals was alarmed at the lack of support being provided to the economics faculty at Auburn and on March 22 he sent Defendant Leath an email saying as much. After agreeing to a meeting, Defendant Leath cancelled and refused to meet with Plaintiff throughout the Spring of 2018. Then, on May 25, 2018, Defendant Aistrup summarily removed Seals and Stern, another prominent member of the economics faculty who had also served as a source for various articles, from the positions of Graduate Program Officer and department chair, respectively.

On May 31, 2018, Defendant Aistrup called the economic department's secretary, Jennifer Bruno, and instructed her to advise all graduate students to avoid speaking with Seals. Throughout the summer of 2018, actions taken against Seals intensified. Defendant Kim, newly appointed interim chair of the economics department, formed a new graduate program committee without telling Seals or any of the Professors who had expressed support for him and reduced the hours of teaching assistant support for Seals' undergraduate econometrics class. On August 31, Seals filed a grievance against Defendant Aistrup.

In an October 1 meeting with Seals, Defendant Hardgrave admitted that the timing of his removal as Graduate Program Officer had been bad but insisted he could do nothing as he was not involved at the departmental level. At an economics department faculty meeting on November 7, Seals confronted Defendant Kim about various violations of university policy whereupon Defendant Kim responded that he acted within his department precisely as Defendant Hardgrave instructed him to. Defendant Kim claimed to have emails proving this.

In April of 2019, Seals received his performance reviews from the preceding year which listed him as a Graduate Program Officer until May 2018 and rated his performance as "Exceeds Expectations." While Seals remains employed as an economics professor at Auburn University, he did not receive $20,000 in summer salary that he would have received had he not been removed from his internal

position. Secretary Jennifer Bruno was formally reprimanded and involuntarily transferred out of the economics department because of her attempts to inform Seals of the actions being taken against him.

## STANDARD

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

Plaintiff's targets in this litigation are Dr. Steven Leath, who served as the President of Auburn University between 2017 and 2019, Dr. Bill Hardgrave, who is the Provost of Auburn University, Dr. Joseph Aistrup, who is the Dean of the Auburn University College of Liberal Arts, Dr. Hyeongwoo Kim, chair of the economics department at Auburn University, and Dr. Tim Boosinger, who served formerly as

5

the Provost of Auburn University. Plaintiff alleges in Count One that all defendants retaliated against him for exercising his First Amendment rights in violation of 42 U.S.C §1983, in Count Two that all Defendants conspired to retaliate against him for exercising his First Amendment rights in violation of 42 U.S.C. §1985, and in Count Three that all Defendants conspired to retaliate against him for exercising his First Amendment rights in violation of Alabama law.

**Count One: The First Amendment Retaliation Claim Should Not Be Dismissed.**

The Eleventh Circuit standard for First Amendment retaliation claims under §1983 was articulated in *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The plaintiff must establish that his speech was constitutionally protected, that the retaliatory conduct adversely affected the protected speech, and that there is a causal connection between the retaliatory actions and the adverse effect on speech. *See id.* To show that the conduct has adversely affected the speech, the plaintiff must show that the retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights. *See id.*

This claim is brought against all Defendants in both their individual and official capacities and the relief sought from the official capacity claim is purely prospective and injunctive. Defendants make three arguments that the claim should be dismissed. First, Plaintiff relies inappropriately on acts against third parties in

violation of Rule 12(f) of the Federal Rules of Civil Procedure.  Second, Plaintiff's complaint does not satisfy the rudiments of a pleading under the Supreme Court holdings in *Twombly-Iqbal*.  Third, the complaint is an impermissible shotgun pleading.  In response, Plaintiff argues that the actions against others are material to his factual narrative, that he has pled adequate facts to support his claims under *Twombly-Iqbal*, and that the re-alleging of all pled facts is relevant to each count.[1]

### A. Plaintiff's factual contentions relating to others are not grounds for dismissal

Although Plaintiff has clarified that his factual contentions regarding Dr. Stern are illustrative in nature and show the overall pattern of conspiracy, Defendant maintains that consideration of these factual contentions is not appropriate because Plaintiff fails to show a connection to the acts against him.  The Court agrees with Defendants that Plaintiff may not sue for a violation of another's rights and further that to the extent pled facts are irrelevant to Plaintiff's claims, they will not be considered by this Court.  However, the factual contentions regarding Stern are sufficiently connected to Plaintiff for him to use.

---

[1] Defendants make these same three arguments for a dismissal due to insufficiency against all three counts in the complaint.  These claims of insufficiency are dealt with at length here because it is the only basis for dismissal of the first count that has been argued by Defendants.

Defendants argue that Plaintiff "fails to demonstrate how evidence of harm to *others* supports his allegations that Defendants harmed *him*." (emphases in original). Doc. 19 at 5. The Court disagrees. Seals and Stern are professors in the economics department of Auburn University. They collaborated to speak out against the Public Administration major and to provide information about it to publications. Regarding the retaliation against them, both men collaborated in the campaign to gain a separate school of economics and met with University leadership regarding the state of their department. Both men were punished at the same time and in the same way. Bruno was not very different. She was castigated for sending information to Stern and Seals and ultimately reassigned for her continued "loyalty" to them. These parallel narratives allege that the Auburn administration took an adverse view towards people involved in the scandal, and that retaliation was routine. When discrimination of the same sort occurs against a similarly situated coworker, it is admissible to prove the intent of Defendants to discriminate and retaliate. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008).

Defendants are correct that allegations relating entirely to someone else and irrelevant to Plaintiff's claims should be struck. Although the Court does not necessarily conclude that evidence underlying these allegations would be relevant for summary judgment or trial, the paragraphs of the complaint that contain only references to Stern and Bruno are relevant enough that they not be struck from the

complaint. Specifically, the Court finds that none of these paragraphs violate the command of Federal Rule of Civil Procedure 12(f) that matter not be redundant, immaterial, impertinent, or scandalous, and therefore none will be struck.

### B. Plaintiff has complied with the pleading standard laid out by *Twombly-Iqbal*

Under *Twombly-Iqbal*, a pleading must contain a short and plain statement of a claim showing that the pleader is entitled to relief. It need not include detailed factual allegations but must go further than a bare and conclusory accusation of harm. The complaint must contain enough factual matter to state a claim that is plausible on its face. This plausibility means that the court can draw a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Defendants argue that the complaint is not short and plain and contains editorializing as well as conclusory legal statements. The Court disagrees. Defendants have not argued that Plaintiff's speech was not constitutionally protected and so Plaintiff need only show that there were actions taken against him that would make it less likely for him to speak and that were causally connected to that speech. Plaintiff has done both.

In the summer of 2015, Seals gave information and assistance to a reporter from the Wall Street Journal who was writing a story about the Public Administration major. In November of that year, Plaintiff served as a listed source for a story in the Alabama Gazette. Shortly thereafter, Plaintiff created a collage of photographs on his door which showed Auburn University leadership figures locking arms with Joseph Stalin. Up to this point, Seals had been exercising what Defendants do not dispute was his First Amendment right to free speech.

People began to notice the photo collage and in October of 2016, the retaliation began. Defendant Aistrup, whose picture was included in the collage, sent Seals an email asking that it be taken down and offering a close encounter for a better picture. Shortly thereafter, Defendant Aistrup approached Seals and, in front of witnesses, said "may the wings of corruption carry you far." Later that same day, Defendant Aistrup began yelling at Seals for questioning his curricular proposals. During this string of retaliatory actions taken toward Seals, a series of similar actions were taken against Stern, including verbal reprimands and threats of firing. These acts were motivated explicitly by the speech of Seals and Stern.

Stern met with President Gogue about the retaliation he and Seals were being subjected to. Gogue agreed on April 11, 2017 to move the economics department out of the liberal arts college and away from the control of those retaliating against the faculty. On July 5, after Gogue's departure, Defendant Leath and Defendant

Boosinger nullified the agreement made between Gogue and the economics faculty. Plaintiff alleges that this caused him to lose the prestige of being part of an independent school of economics. While neither Defendants Boosinger nor Leath were explicit about their motivation, this move is significant when viewed in the greater context of retaliation.

On February 16 of 2018, another article was published about the scandal, this time in the Chronicle of Higher Education. The article contained an explicit mention of the collage on Seals' door. Once again, Defendants do not contest that these activities constituted protected speech. Nevertheless, the administration began to take adverse actions against Seals shortly thereafter.

After being forced back into the college of liberal arts, the economics faculty was not provided with the new hires it needed to maintain itself. When Seals attempted to meet with Defendant Leath about this, he was continually refused. On May 25, 2018, Seals was relieved of his duties as Graduate Program Officer. In response to a student's email about the firing, Defendant Aistrup wrote that he "did not take these actions without much contemplation and reflection." This statement contradicts any implication by Defendants that too much time had passed between Seals' speech and the actions taken against him.

On May 31, 2018, Jennifer Bruno, the economics department secretary, was instructed to advise all graduate students not to communicate with Seals. A graduate program committee was formed without Seals' knowledge during the summer of 2018 and the hours of teaching assistant support for his econometrics class were cut without explanation. Bruno was criticized and transferred to another department for giving Seals information about the actions taken against him. At the very least, this action implies that the administration viewed Seals in an adverse light.

When Seals met with Defendant Hardgrave in October of 2018, he was told that the decisions made were exclusively those of the new interim department chair, Defendant Kim. Defendant Hardgrave insisted that he did not get involved at the departmental level. When confronted with this information at a faculty meeting several days later, Defendant Kim contradicted Defendant Hardgrave and claimed that his decisions were guided by emails he received from Hardgrave. Here, the collaboration between Defendants is made explicit.

Plaintiff has clearly alleged that he had a constitutional right to speak, that the conduct he suffered was motivated by that speech, and that the conduct would likely deter someone similarly situated from exercising his First Amendment rights. He has also alleged at least one adverse act on the part of each Defendant. Finally, construing the allegations in the light most favorable to Plaintiff, a person of

reasonable firmness would be deterred from speaking by Defendants' alleged actions against Plaintiff.

### C. The Complaint is not an impermissible shotgun pleading

A shotgun pleading is one that is "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case…can be masked." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The paradigmatic example of a shotgun pleading is one that contains a variety of contract and tort claims interwoven in a haphazard fashion. *See id.* There are four types. The first type, and the type that Defendants accuse Plaintiff of indulging in, is one where "a complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts contain irrelevant factual allegations and legal conclusions." *Id.*

To rebut, Plaintiff points out that his three claims have the same nucleus of operative fact. Indeed, the three claims are nearly identical. The first count alleges retaliation and the second two counts allege that people got together and agreed to retaliate. Thus, proving retaliation, or at least activity that implicates an agreement to retaliate, is relevant to all three counts. Evidence that mattered for the first claim will surely matter for each of the second two.

There is a marked difference between Plaintiff's complaint and those referenced in Eleventh Circuit cases dismissing type one shotgun pleadings. The "perfect example" of this type of pleading is one where it is "virtually impossible to know which allegations of fact are intended to support which claims." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Such vague pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). To be blunt, the pleading should make it "impossible for any Defendant to reasonably frame an answer." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 (11th Cir. 2018). Finally, this complaint is unlike those that courts in this Circuit have found to be insufficiently "short and plain." *See e.g. Fed. Home Loan Mortg. Corp. v. McGough*, 2018 WL 5116844, at *1 (N.D. Ala. Oct. 19, 2018) (the amended complaint was 56 pages long and contained 326 paragraphs of allegations, representing a "morass of conflicting facts and unsubstantiated theories.").

No such snafu is present here. Plaintiff's complaint presents a cogent picture of the efforts of the economics faculty to publicize the Public Administration scandal, the adverse actions taken against him, and the circumstances of each action which suggest a connection between the two. It is far from impossible to know

which allegations of fact are intended to support which claims; indeed, it isn't even difficult. There is no unnecessary burden on the litigants or judicial resources. Therefore, the complaint will not be dismissed as an impermissible shotgun pleading.

**Counts Two and Three: The Federal and State-law Conspiracy Claims**

Defendants' central argument against liability under the latter two counts is the application of the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000) (en banc). The stated rationale for the doctrine is that actions related to employment are attributable to the employer and the employer cannot conspire with itself. *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). Plaintiff argues that the Eleventh Circuit has not applied the doctrine in cases where an entity is not a named defendant and, in the alternative, the administrators were working solely for their own benefit and not within the scope of their employment.

A. The doctrine blocks liability under federal law

The Eleventh Circuit has held that the intracorporate conspiracy doctrine applies in civil rights cases like this one. *See id.* Plaintiff argues that this doctrine has no application because he has not sued Auburn, the corporation. Plaintiff notes that "the purpose of the doctrine is not to protect a corporation's employees but instead to prevent a corporation from being held liable for the conspiring of its employees." Doc. 18 at 5. (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). Nonetheless, the en banc Eleventh Circuit rejected this argument in *McAndrew* and plainly held that "a corporation cannot conspire with its employees, *and its employees, when acting in the scope of their employment, cannot conspire among themselves*." *Id.* (emphasis added).

Plaintiff argues that, even if the doctrine applies, there are exceptions for instances in which the acts of the employees were not authorized or were solely for the benefit of those employees. These arguments also fail.

First, Plaintiff argues that, if the benefit that Defendants obtained is solely personal and not merely an incidental benefit to the employee, then the doctrine will not apply. *See Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470 (7th Cir. 1993).[2] *See also H&B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244

---

[2] This precedent originates outside of the Eleventh Circuit but the court will assume without deciding that such personal benefit is a requirement.

16

(5th Cir. 1978). This argument fails. Plaintiff offers only a few benefits enjoyed by Defendants Hardgrave, Aistrup, and Kim that he argues were their sole motivations and not incidental. Defendants point out that as long as the benefits relate to pay or organizational restructuring, the benefit was not legally distinct from Auburn as the employer. Defendant Kim's new salary after taking the position as interim department chair and the maintenance of Defendants Hardgrave and Aistrup's status within the University were incidental benefits. The central benefit of their alleged actions—if any—was to Auburn.

Second, Plaintiff argues that any action taken by an employee that is unauthorized will not count as the action of the corporation and thus escape the doctrine. *See Buschi v. Kirven*, 775 F.2d 1240, 1253 (4th Cir. 1985). Defendants counter that in the Eleventh Circuit, the fact that an action was against policy or even violative of someone's constitutional rights in no way renders that action outside the scope of employment. The test, is "whether the employee ... was performing a function that, but for the alleged constitutional infirmity, was within the ambit of [his] scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010). *See also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (holding that asking "whether it was within the defendant's authority to commit the allegedly illegal act" would pose an "inquiry [that] is not more than an 'untenable'

17

tautology."). Here, the alleged retaliatory acts are: removing Seals as the Economics Department Graduate Program Officer, blocking his participation in Department committees, refusing to meet with him, unilaterally reabsorbing his department, and reducing his teaching assistant support. These were all actions that were firmly within the employment role of Defendants as employees of Auburn.

Defendants cannot be held liable for a federal conspiracy in violation of §1985. The decisions made by Defendants were administrative in nature and were tied to their duties at Auburn University. Since all the named conspirators are employees of the same entity, they cannot be liable under federal law.

B. The doctrine also blocks liability under state law

The Alabama Supreme Court has also adopted the intracorporate conspiracy doctrine. *See M & F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013). In doing so, it has favorably cited *McAndrew*, the Eleventh Circuit's leading case on the subject. *Id.* It does not appear that the Alabama Supreme Court has expressly addressed a case like this one in which the intracorporate conspiracy doctrine has been raised as a defense by employees in litigation where the employer was not a defendant. Accordingly, the Court "must predict how the [Alabama Supreme] court would decide this" issue. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011). Given the Alabama Supreme Court's

favorable treatment of Eleventh Circuit cases on the subject, there is little doubt that the Alabama Supreme Court would apply the intracorporate conspiracy doctrine in the same way the Eleventh Circuit has. *See, e.g., Bradley v. Franklin*, 2019 WL 1111404, at *5 (N.D. Ala. Mar. 11, 2019) (reaching this conclusion). Accordingly, the state conspiracy count should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

2. Defendants' Motion to Dismiss Counts 2 and 3 is **GRANTED**.

3. Defendants' Motion to Dismiss Count 1 is **DENIED**.

**DONE** and **ORDERED** this 18th day of December 2019.

/s/ Andrew L. Brasher

ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE