IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ALAN SEALS,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )         CASE NO. 3:19-cv-468-RAH-JTA
                                     )
STEVEN LEATH, DR., *et al*.,         )
                                     )
        Defendants.                  )

## ORDER

This matter is before the court on Plaintiff's Amended Motion to Enforce the Court's Discovery Order and for Sanctions.  (Doc. No. 57.)  Defendants filed a Response in Opposition to Plaintiff's Motion (Doc. No. 59) and Plaintiff filed a Reply thereto (Doc. No. 61).  On June 17, 2021, the court conducted a hearing on the motion and requested additional briefing by the parties.  (Doc. Nos. 69, 70.)  This motion is ripe for resolution.

## I.    BACKGROUND

On February 16, 2021, this court conducted a motion hearing on Plaintiff's Motion to Compel Discovery (Doc. No. 34), which sought, in part, documents responsive to his Request for Production #5 ("RFP #5").  That request was for

> 5.    All documents and communications concerning compensation, benefits, and/or bonuses, including but not limited to, information concerning the decision to increase or decrease said compensation, benefits, and/or bonuses for all professors within the Economics Department from 2016 to present.

Pursuant to Plaintiff's concession during oral argument[1] that responsive documents from 2017 to the present were acceptable, this court ordered

> The motion [be] GRANTED to the extent that Defendants shall produce information responsive to Plaintiff's request for production numbered 5 for the period of 2017 to the present.  Defendants are DIRECTED to provide the requested information by March 8, 2021.

(Doc. No. 41 at 10.)

Defendants' initial production for RFP #5 was made on March 8, 2021.  (Doc. No. 57 at ¶ 3.)  Plaintiff's review prompted two additional inquiries for supplemental documents which Defendants produced in two batches on March 12, 2021.  (*Id*. at ¶¶ 4-7.) On March 13, 2021, Plaintiff requested that Defendants certify their production as to RFP #5 was complete.  (*Id*. at ¶ 8.)  Defendants' counsel responded that same date via email "I am working to determine if there is anything else responsive."  (*Id*.; Doc. No. 57-3.)

Without further inquiry from Plaintiff, Defendants supplemented their responses on March 26, 2021; March 30, 2021; and April 1, 2021.  (Doc. No. 57 at ¶ 11.)  On April 2, 2021, Defendants certified that they had complied in good faith with the court's Order. (*Id*.)

In an April 7, 2021 letter to Defendants, Plaintiff complained that extensive redactions made it impossible to determine the nature of several documents or how they were responsive to RFP #5.  (*Id*. at ¶¶ 12-13; Doc. No. 57-4 at 1.)  Plaintiff also notified Defendants that the "primary issue with the production is the format in which it was delivered," because the PDF documents did not contain metadata and hampered his

---

[1] (*See* Doc. No. 41 at 2, n.1.)

efficient review and utilization of the discovery.  (Doc. No. 57 at ¶ 13; Doc. No. 57-4 at 1.) Plaintiff referenced his RFP instruction that electronically stored information ("ESI") "be produced in a processed, near-native format," and asserted that Defendants' production failed to comply with Federal Rule of Civil Procedure 34(b)(1)(C) (allowing party to specify the format of ESI production).  (Doc. No. 57 at ¶ 13; Doc. No. 57-4.)  Plaintiff wrote Defendants again on April 8, 2021, complaining that the discovery response was still deficient.  (Doc. No. 57 at ¶ 14; Doc. No. 57-5 at 1.)  Plaintiff also requested (1) a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5) that would enable him to assess Defendants' privilege claims for redacted passages, and (2) additional depositions of Defendants Hardgrave, Kim and Aistrup.  (Doc. No. 57 at ¶ 14; Doc. No. 57-5 at 1.)

Defendants responded in an April 9, 2021 email that the information redacted from the RFP #5 documents was not privileged but was instead related to colleges and schools other than the Economics Department and individuals who are not professors within that Department.  (*Id*. at ¶ 15; Doc. No. 57-6.)  Defendants agreed to produce documents in native format only if it is possible to maintain the redactions for material unrelated to the Economics Department, or alternatively, to submit all native documents to the court for *in camera* review if so ordered.  (Doc. No. 57 at ¶ 15.)  Defendants also agreed to limited depositions of Hardgrave, Aistrup and Kim on all documents responsive to RFP #5.  (*Id*.)

Plaintiff avers that he has done everything possible to avoid court intervention and "seeks to minimize the risk of being prejudiced by not bringing the current status of the discovery" to the court's attention.  (*Id*. at ¶ 17.)  He asks the court to consider the range of sanctions set forth in Federal Rule of Civil Procedure 37(b)(2)(A), which include

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(*Id.* at ¶ 18.)  In addition to asking for costs and fees associated with the instant motion, Plaintiff asks that Defendants be prohibited "from introducing any evidence (and striking evidence already introduced) that supports Defendants' position that Plaintiff's raise was proper and not a retaliatory act committed by Defendants."  (*Id.* at ¶ 19.)

Defendants respond that Plaintiff's letter of April 7, 2021, was the first time he specified "that the documents be provided in 'near-native format' rather than as PDF files, which Defendants had been producing."  (Doc. No. 59 at ¶ 5; *see also id.* at 8 (incorrectly citing Plaintiff's letter of April 8, rather than April 7, as the initial request for native format).)  Defendants argue that Plaintiff's demand for information related to other faculty and staff is an impermissible broadening of the original discovery request and this court's Order.  (*Id.* at 5-6.)  Defendants state they have learned it is possible to produce responsive documents in "near-native format" with redactions and they are willing to do so, but prefer that the court first determine whether Plaintiff is entitled to the unredacted documents.  (*Id.* at ¶ 8; pp. 5-6.)

4

As to sanctions, Defendants counter they have complied with the court's Order by producing documents responsive to RFP #5 on a rolling basis. (*Id*. at 4-5.) They emphasize the private nature of the redacted information that is not covered by the Protective Order entered in this case[2] and assert that they have not violated an order of the court but have only acted in accordance with their good faith belief that RFP #5 was limited to records relevant to the Economics Department. (*Id*. at 6-7, 8-9.) Defendants cite their agreement to an *in camera* review of redactions and agreement to continue deadlines pending resolution of these disputes as demonstrations of additional good faith so that Plaintiff would not be prejudiced by the ongoing discovery. (Doc. No. 59 at 9.)

Plaintiff's Reply relies upon Rule 34(b)(2)(E)(ii) to argue that even if he had not specified a format for the production, a party must provide ESI in a form in which it is ordinarily maintained or reasonably usable. (Doc. No. 61 at ¶ 5.) Plaintiff asserts that the PDFs produced by Defendants satisfy neither criteria. (*Id*.) He asks the court to find Defendants' rolling production to be evidence of bad faith as an additional 1058 pages were discovered after their initial document search. (*Id*. at ¶ 3.) He also labels Defendants' choice of production format and redactions as "discovery abuse." (*Id*. at ¶ 4.) Plaintiff claims prejudice due to the additional time and resources expended in obtaining the supplemental discovery, time spent analyzing incomplete production, and additional time

---

[2] The Consent Protective Order entered in this case specifies that it covers (1) the names and other identifying information of any current or former Auburn University student in documents previously identified as "AU FOIA RESPONSE 0853 through and including 0862;" and (2) Faculty Annual Reviews ("FARS") of Instructors, Assistant Professors, Associate Professors and Professors of Auburn University's Department of Economics that are identified as "Seals Plaintiff RFP #5 0014 through and including 0080." (Doc. No. 45 at 1-2.)

and resources that additional depositions will require.  (*Id*. at ¶ 6.)  He also notes that Defendants have neither provided Defendant Kim's contracts related to his appointment as Economics Chair, nor produced numerous spreadsheets referenced in the newly produced emails.  (*Id*. at ¶ 7.)

During the June 17, 2021 hearing, the court noted that the parties' Rule 26(f) Report (Doc. No. 26) did not specify the form for production of ESI, as required by Rule 26(f)(3)(C), and that the protective order entered in this case (Doc. No. 45) was very limited in scope.  When asked why his challenge to Defendants' choice of form of production was not raised immediately upon receiving their initial production, Plaintiff explained that he requested discovery in native format after the document count ballooned from the original release of eighty-one pages to over one thousand additional pages as production continued. Plaintiff argued that the Defendants' redaction of otherwise responsive documents was inconsistent with the breadth and accessibility of discovery contemplated by Federal Rules of Civil Procedure 26(b)(1) and 34(a), and that he was entitled to all non-privileged information that is in any responsive document.  Defendants replied that Plaintiff's insistence on unredacted documents ran counter to the court's Order that they provide information responsive to RFP #5, *i.e.*, related to the Economics Department, and that redaction of non-responsive information was consistent with the court's direction.

Following the hearing, the court ordered the parties to submit legal argument and authorities in support of their respective positions prohibiting, or allowing, the redaction of non-responsive information under the Federal Rules of Civil Procedure.  (Doc. No. 67.) Plaintiff's Submission of Authority contends that he cannot gauge the veracity of

Defendants' reasons for redaction because they failed to seek "a protective order [limiting] the disclosure of information contained in documents that were unilaterally deemed irrelevant." (Doc. No. 69 at 4.)  Plaintiff argues that, because full disclosure of the documents is the only way to determine the context of the redactions, "full production should be required." (*Id*.)  Plaintiff attempts to illustrate this point by including with his Submission (1) a redacted email from Defendant Kim which he believes conceals responsive information (*id*. at 5); and (2) a redacted document which hinders his ability to gauge whether the Economics Department is treated differently by the University (*id*. at 5-7).

In addition to addressing the cases relied upon by Plaintiff, Defendants respond that Plaintiff mischaracterizes the absence of a broad protective order in this case as a failure for which they are responsible. (Doc. No. 70 at 5-6.)  Defendants' Response includes the protective order they proposed in late 2020. (Doc. No. 70-1.)  Their proposed language would have protected "[a]ll information related to any current or former student, employee or agent of Auburn University and/or Defendants" as well as any University "trade secrets or other confidential proprietary technical, business, or financial information that is not generally known to the public[.]" (*Id*. at 5.)  However, Plaintiff rejected this language, so Defendants agreed to the narrow protective order in effect at this time. (*Id*.)  In response to Plaintiff's argument that he cannot determine whether the University treats the Economics Department differently from other departments, Defendants assert that Plaintiff has no standing to request the unredacted documents. (*Id*. at 6-7.)  Defendants note Plaintiff's previous claims outside this litigation that the Department has not been treated

equitably by the University, and suspect that he seeks the additional information to support his opinions on that issue.  (*Id*. at 8.)  Consequently, Defendants believe that the release of information regarding the University's operation of the Economics Department would be an abuse of discovery.  (*Id*.)

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) defines the general scope of discovery in the federal courts.  The rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  It further specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  *Id*.  Rule 34(a)(1)(A) allows a party to serve upon another a "request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative . . . to inspect . . . any designated documents or electronically stored information – including writings, drawings, graphs, charts . . . and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . ."  Fed. R. Civ. P. 34(a)(1)(A).

Rule 37(a) permits a party to move for an order compelling disclosure or discovery.  *See* Fed. R. Civ. P. 37(a) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.")  A Rule 37 motion to compel a

discovery response can only be made in limited circumstances.  *See* Fed. R. Civ. P. 37(a)(3)(B).  In regard to discovery requests made under Rule 34, a Rule 37 motion can only be made if "a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  An incomplete disclosure, answer or response to a Rule 34 discovery request is treated as a failure to disclose, answer or respond.  Fed. R. Civ. P. 37(a)(4). Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court.  *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

## III.   DISCUSSION

As requested by the court, Plaintiff's Submission of Authority directs the court to cases which support his position that Rules 26(b)(1) and 34(a)(1)(A) allow the production of responsive documents without redaction.  The primary case cited by Plaintiff, *Bonnell v. Carnival Corp.*, No. 13-22265, 2014 WL 10979823 (S.D. Fla. Jan. 14, 2014), notes that "there is virtually an even split" among courts on the issue of permitting "unilateral redaction of responsive documents based solely on the producing party's opinion that the removed information is not relevant for discovery purposes." *Bonnell*, 2014 WL 10979823 at *3.   *See also ADP, LLC v. Ultimate Software Grp., Inc.,* No. 17-cv-61274-MIDDLEBROOKS, 2017 WL 7794226, at *1 (S.D. Fla. Dec. 15, 2017) ("District Courts throughout the country appear to be divided on the issue of whether redaction may be an appropriate means to challenge relevance.").  In *Bonnell*, the court found the defendant's redactions were inconsistent with the goal of permitting broad discovery under Rule

26(b)(1) and Rule 34's focus on "the production of *documents*, not 'individual . . . paragraphs, sentences, or words within those documents.' " *Bonnell*, *id*. (quoting *Bartholomew v. Avalon Cap. Grp., Inc*., 278 F.R.D. 441, 451-52 (D. Minn. 2011).) The court concluded that because "the better, less-risky approach is to not provide litigants with the *carte blanche* right to willy-nilly redact information from otherwise responsive documents in the absence of privilege, merely because the producing party concludes on its own that some words, phrases, or paragraphs are somehow not relevant," a defendant "*cannot* unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case." *Bonnell*, *id*. at *4. Plaintiff cites the defendant's failure to seek a protective order to obtain leave of court to redact non-privileged information from responsive documents, or to obtain the plaintiff's consent prior to doing so, as facts that were critical to the decision in *Bonnell*. (Doc. No. 69 at 1-2 (citing *Bonnell*, 2014 WL 10979823 at *2).) He asserts that Defendants' failure in this case to secure a protective order or seek his permission to unilaterally redact allegedly irrelevant information provides grounds for this court to find that they have waived any right to withhold documents on the basis of relevance. (*Id*. at 2-3.)

Defendants respond that the court must consider the circumstances under which the redactions at issue were made, which they believe are distinguishable from those in *Bonnell*. Defendants submit their production was undertaken pursuant to this court's Order and Plaintiff's RFP #5 which was modified to include the years 2017 to the present. (Doc. No. 70 at 3.) Thus, Defendants argue the redactions were not "willy-nilly" because they

concealed information relating to units of the University that this court's Order did not require released, and which Plaintiff's RFP #5 did not request.  (*Id*. at 3-4.)  Defendants acknowledge that if the protective order they originally submitted to Plaintiff had been accepted, the release of the unredacted documents now sought by Plaintiff could be accomplished with no danger to the privacy of persons whose sensitive information is in the documents. (*Id*. at 5.)  *See ADP, LLC v. Ultimate Software Grp., Inc.,* No. 17-cv-61274-MIDDLEBROOKS, 2017 WL 7794226, at *2 (S.D. Fla. Dec. 15, 2017) (ordering release of redacted information upon defendant's failure to show that the designation of Attorneys' Eyes Only designation was inadequate to protect the sensitive information in responsive, redacted documents); *Shell Offshore, Inc. v. Eni Petroleum*, Civ. No. 16-15537, 2017 WL 11536165, at *5 (E.D. La. Aug. 28, 2017) (citing parties' agreement to redact non-responsive confidential information, as defined by protective order, and acknowledging that a producing party always makes the initial decision whether a particular document is relevant and responsive to discovery requests); *Spano v. Boeing Co*., No. 3:06-cv-00743-DRH-DGW, 2008 WL 1774460, at *2 (S.D. Ill. Apr. 16, 2008) (noting the expansive nature of discovery under Rule 26(b)(1) and finding that redaction is appropriate where the information redacted was not relevant to the issues in a case).

The undersigned finds that Defendants responded to Plaintiff's RFP #5, as modified by this court.  Plaintiff's position is supported by cases to the extent that a protective order guards the release of sensitive information.  No such protective order is in place here.  The court recognizes that it took great effort on Plaintiff's part to secure the documents eventually produced by Defendants, but that does not justify going beyond the terms of

Plaintiff's request.  Plaintiff is experiencing what the *Bonnell* court warned against - that "unilateral editing of documents 'frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured," and that it also 'tends to make documents confusing or difficult to use.' " *Bonnell*, *id*. at *3 (quoting *In re Medeva Securities Litigation*, No. 93-4376-KN AJWX, 1995 WL 943468 (C.D. Cal. May 30, 1995).)  However, Plaintiff could have guarded against this concern by agreeing to the less narrow protective order proposed by Defendants.  *See SRS Tech., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 529 (N.D. Ala. 2003) (Protective orders entered pursuant to Rule 26(c) facilitate full disclosure of information during litigation and allow for more cooperation during discovery.)  The court finds that because Defendants' redactions are consistent with this court's Order (Doc. No. 41) and Plaintiff's RFP #5, Defendants sole remaining responsibility is to produce the redacted documents in the near-native format agreed upon by the parties.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Amended Motion to Enforce the Court's Discovery Order and for Sanctions (Doc. No. 57) is DENIED.

Defendants are DIRECTED to produce responsive documents in "near-native format" with redactions.

DONE this 20th day of July, 2021.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE